IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| MERCHANTS BONDING COMPANY, Plaintiff, vs. FIRST AMERICAN TITLE INSURANCE AGENCY OF UTAH, INC., Defendant. | ORDER<br><br>Case No. 2:06-CV-413 TC |
| --- | --- |

This action is centered on a title report that First American Title Insurance Agency of Utah, Inc. ("First American") provided to Merchants Bonding Company ("Merchants"). Merchants requested that report from First American while Merchants was in the process of issuing performance and payment bonds to an electrical subcontractor and obtaining collateral on those bonds. Specifically, the subcontractor's principals had pledged a property to Merchants as collateral on the bonds, Merchants recorded its mortgage on that property, and then Merchants requested a title report on the property from First American. It is undisputed that First American's report to Merchants on the property did not show a lien that a bank had recorded prior to the date that Merchants recorded its lien.

Thereafter, Merchants paid close to $1 million on the bonds when the subcontractor fell behind on the jobs and ultimately defaulted. Merchants collected far less than it expected on the collateral when the property sold and the bank collected on its first place lien. Merchants then filed this suit against First American. In its complaint, Merchant alleges that it relied on First American's title report to its detriment and that First American is liable for negligent misrepresentation. Merchants further claims that First American breached a contract by providing the report.

Now before the court are First American and Merchants' cross motions for summary judgment (Dkt. Nos. 21 & 25). First American makes three main arguments in support of its motion. First, it contends that by releasing the subcontractor's principals for liability on the bonds, Merchants also released First American. Next, First American argues that, as a matter of law, title insurance companies are not liable in tort for initial title reports. Third, First American maintains that Merchants did not rely on the report. For its part, Merchants moves for judgment that First American breached a contract with it and that First American made a negligent misrepresentation. Because First American misreads the law and because the record indicates a dispute of material fact on all of the parties' asserted grounds for summary judgment, the cross motions are DENIED.

**BACKGROUND**

Merchants is a surety company that issued performance and payment bonds to an electrical subcontractor, Electro Management, Inc. ("EMI"), for wiring jobs at two schools in West Layton, Utah, and Eagle Mountain, Utah. As part of obtaining these bonds, EMI's principals, Greg and Victoria Show, mortgaged their 46 acre farm (the "Farm") to Merchants as collateral for default. The Shows represented to Merchants that the Farm had no liens, and at the time Merchants sent the Shows the documents to mortgage the Farm, that was true. Merchants issued the bonds to EMI for the wiring jobs on July 23, 2003, and October 28, 2003.

Before Merchants filed its collateral mortgage on the Farm with the Iron County, Utah recorder, however, the Shows pledged the Farm as collateral on a $300,000 line of credit from State Bank of Southern Utah. The bank recorded its lien on the Farm on November 12, 2003. Merchants recorded its lien on the Farm on December 8, 2003.

On January 27, 2004, Merchants requested a title report on the Farm from First

American. On February 11, 2004, First American provided Merchants with a "miscellaneous report" that included details about liens on the Farm. First American's miscellaneous report did not include the bank's previously recorded lien.

In late April 2004, EMI fell behind on its obligations on both of the school jobs. Merchants worked with EMI and the Shows to try to salvage the situation, paying about $1 million to Hogan & Associates Construction, Inc., the general contractor, as part of those efforts. During that same period, Mr. Show informed Merchants that there might be a lien on the Farm recorded ahead of Merchants'. Merchants confirmed this fact with a title report from another title insurance company.

Eventually, it became clear that EMI would not finish the school jobs and would completely default on the bonds. In June 2004, the Shows sold the Farm. The Farm sold for about $541,000, less than half of what it had appraised for when the Shows had pledged it to Merchants. Merchants' share, which it took after the bank, was about $211,000. As part of the sale of the Farm, Merchants released the Shows from any further liability on the bonds.

After collecting its proceeds from the sale of the Farm, Merchants sued First American in this court, asserting two counts: breach of contract and negligent misrepresentation. Looking to the first count, Merchants alleges that its request for and First American's provision of the title report on the Farm constituted a contract. According to Merchants, First American assumed a contractual duty to provide an accurate report on the Farm's title and that First American breached that duty when it provided a report that did not include the bank's first lien. Second, Merchants claims negligent misrepresentation based on First American's failure to report the bank's first recorded lien. Merchants alleged damages of about $330,00, the difference between what Merchants collected from the Farm's sale and what Merchants would have collected if the

bank did not have a lien.

Both of the parties have filed motions for summary judgment.. First American bases its motion on three grounds. First, it seeks a ruling that, under Utah statute, Merchants released First American when it released the Shows because the First American and the Shows are co-obligors. Second, First American argues that as a matter of Utah law, a title insurance company cannot be liable for inaccurate title reports. Finally, First American maintains that Merchants did not rely on any alleged misrepresentation by First American, which defeats Merchants' negligent misrepresentation claim.

In its cross motion, Merchants requests two rulings. First, Merchants moves the court to conclude that First American breached a contract between Merchants and First American to provide an accurate title report. Second, Merchants seeks a finding that First American's omission of the first recorded lien from the Farm's title report was a negligent misrepresentation. Merchants' motion is partial in that it does not request resolution of the other elements of the claims: damages for contract and reliance and damages for negligent misrepresentation.

## ANALYSIS

### I. Summary Judgment Standard

"Summary judgment is proper if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Faustin v. City and County of Denver, Colo., 423 F.3d 1192 (10th Cir. 2005) (citations and internal quotation marks omitted). See also Fed R. Civ Pro. 56(c). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." Chasteen v.

UNISIA JECS Corp., 216 F.3d 1212, 1216 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II. First American's Arguments

### A. Utah's Joint Obligations Act

First American's first ground for summary judgment- that Merchants' release of the Shows released First American- is without merit. First American correctly observes that under Utah Code Ann. § 15-4-1 *et seq.*, the Joint Obligations Act (the "JOA"), unreservedly releasing one co-obligor from liability for a tort or a contractual obligation also releases any other co-obligor. First American then asserts, in conclusory fashion, that First American and the Shows were co-obligors and the JOA applies here. If First American is the Show's co-obligor, then Merchants' release of the Shows without reserving a claim against First American amounts to a release of First American.

First American's theory fails because it has not established that First American was a co-obligor of the Shows. Utah Code Ann. § 15-4-1(2) defines "several obligors" as "obligors severally bound for the same performance." On the face of the complaint, and in the evidence presented, it is apparent that First American does not meet this definition. First American's alleged duty to perform was wholly separate from that of the Shows. That is, Merchants asked First American to provide a title report on the Farm, while the Shows' anticipated performance to Merchants involved living up to the terms of EMI's wiring contracts and providing collateral in case they did not.

In cases not involving co-obligors, such as this one, Utah statute provides that "[a] release

given by a person seeking recovery to one or more defendants does not discharge any other defendant unless the release so provides." Utah Code Ann. § 78B-5-822. Consequently, Merchants' release of the Shows had no effect on any of its claims against First American, regardless of whether that release reserved other claims.

**B. Title Insurers' Liability for Preliminary Reports**

As its second ground for summary judgment, First American contends that a matter of law, a title insurance company is not liable in tort for a preliminary title report. Merchants counters that if a title insurance company undertakes a an abstractor's duty, it can be liable in tort for an inaccurate preliminary title report. Merchants then argues that there is a disputed question of fact about whether First American took on such a duty here and First American consequently faces potential liability for negligent misrepresentation. For the reasons stated below, the court agrees with Merchants.

First American's argument misreads relevant Utah authority by improperly extending the general rule. As a general rule, when a title insurance company issues a faulty title report on a property on which the company also issues title insurance, the company cannot be liable in tort for that report. See Culp Const. Co. v. Buildmart Mall, 795 P.2d 650, 653-54 (Utah 1990). This rule appears to be amplified by Gildea v. Guardian Title Co. of Utah, 970 P.2d 1265 (Utah 1998). Gildea implied that as long a title insurance company provided an initial title report as part of negotiating to provide insurance a potential customer, the company cannot be liable for the report. See id. at 1271-72. This proposition held true even though the initial report was paid for and despite the fact that company did not actually issue the title insurance policy. See id.[1] The

[1]It is not clear that these apparent rulings were necessary, because the party seeking to hold the title insurance company liable in Gildea was not the party to whom the company provided the report. See Gildea, 970 P.2d. at 1271.

logic behind these rulings is that a title insurance company negotiating a policy would not intend for the other party to rely on an initial title report as an abstract of title, but instead provides the report to reflect the terms and conditions of possible coverage. See Culp, 795 P.2d at 653 ("However, we believe that the better-reasoned approach is to consider preliminary title reports and commitments for title insurance as 'no more than a statement of the terms and conditions upon which the insurer is willing to issue its title policy....'") (footnote and citations omitted).

But First American takes this rule one step too far by arguing that title insurance companies are never liable in tort for initial title reports. As the Culp court explained, a negligent misrepresentation claim may lie against a title insurance company when the company knowingly assumes the role of an abstractor. See 795 P.2d at 655. In Culp, the court concluded that there was a material issue of fact on that question because the title insurance company accepted instructions to transfer title only if the title's status remained unchanged from that in the initial report. See id.

Here, Merchants paid First American $300 for a title report on the Farm. There is no indication from the record that First American understood that Merchants was seeking to obtain title insurance in requesting that report. Nor did the title report reflect any terms or conditions on which First American would issue a policy. It could accordingly be inferred from the context of the transaction that First American understood that Merchants wanted a complete title abstract and that First American intended to provide one. Consequently, there is a disputed material fact concerning whether First American can be liable for a negligent misrepresentation in its report.

**C. Merchants' Reliance**

First American's final argument is that Merchants did not detrimentally rely on the report, precluding a negligent misrepresentation claim. But as explained below, there is a dispute

of material fact on the issue of Merchant's reliance.

Initially, First American asserts that no one from Merchants even looked at the title report. But the recipient of the report at Merchants testified that he while did not recall reviewing it, it would have been his practice to do so. An inference can be made from this testimony that Merchants' representative studied the report and because he did not see any "red flags" (such as a first recorded lien), he simply filed it without any further thought or action. That the recipient could not specifically remember looking at the report at the time of his deposition does not undisputedly negate this reasonable conclusion.

Second, First American argues that there was no reliance because Merchants had already issued the bonds to EMI by the time Merchants requested the title search from First American. But Merchants has never alleged that they issued the bonds in reliance on the title report. Instead, Merchants maintains that if it had learned earlier that the bank had a first place lien on the Farm, Merchants could have sought and probably gained additional collateral from the Shows. Ms. Show made it clear in a supplemental affidavit that she and Mr. Show had some unencumbered assets at the time First American issued the report. Accordingly, there is a question of fact as to whether Merchants relied on the erroneous title report by refraining from seeking additional collateral from the Shows.[2]

## III. Merchants' Cross Motion

Merchants' cross motion for summary judgment also fails. Merchants points out that First American does not dispute that the title report was wrong because it left out the bank's lien on the Farm. Both of Merchants' requested judgments are based on this fact. First, Merchants

[2]Because Merchants' failure to seek additional collateral on the bonds is enough to raise a question about whether it relied on the report, the court will not address any other potential forms of reliance.

moves for a judgment that First American breached a contract with Merchants by failing to provide a correct report. Second, Merchants wants the court to find that First American made a negligent misrepresentation about the status of the title.

Both of these grounds are negated by making a reasonable inference in First American's favor, as the court must on summary judgment. That is, Merchants has not established that the bank's lien was actually reflected in the Iron County recorder's books at the time First American searched the Farm's title. It could be that those books did not contain notice of that lien when First American accessed them. If so, First American's report would have been an accurate representation of what was on file, and Merchants would have an uphill battle at best proving a breach or negligence by First American. For this reason, summary judgment in Merchants' favor is inappropriate.

**ORDER**

For the foregoing reasons, the parties' cross motions for summary judgment are DENIED.

SO ORDERED this 18th day of August, 2008.

BY THE COURT:

Tena Campbell

TENA CAMPBELL
Chief District Judge